**William JOYNER and Jean Joyner, H/W, Appellants,**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Bessie Scott, Felicia M. Scott.**

Commonwealth Court of Pennsylvania.

Argued May 18, 1999.

Decided July 22, 1999.

M. Rhea Lee, Philadelphia, for appellants.

Bradley K. Moss, Philadelphia, for appellee, SEPTA.

Before KELLEY, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

FLAHERTY, Judge.

William and Jean Joyner appeal from an order of the Court of Common Pleas of Philadelphia County (trial court) which denied post-trial motions for a new trial or a judgment notwithstanding the verdict after a jury returned a verdict in favor of Southeastern Pennsylvania Transportation Authority (SEPTA). We affirm.

SEPTA's employees were performing work on its utility poles on the north side of Girard Avenue. Prior to beginning the work, SEPTA's foreman inspected the poles on the north side of the Avenue and found no problems. Nevertheless, one of the poles on the north side of the avenue broke and fell. This pole fell and struck a light pole owned by the city of Philadelphia which in turn fell onto wires. The added tension on the overhead wires caused a SEPTA pole on the **south** side of the avenue to fall onto William Joyner's car, injuring him.

The Joyners initiated suit. William Joyner, while intending to call his attorney, Brad Cooper, inadvertently called SEPTA's attorney, Brad Moss. William Joyner reached Brad Moss' voice mail system. Mr. Joyner left the following message on Brad Moss' phone mail:

> Brad—this is William Joyner, Jean Joyner's husband ... Call me and let me know can I sing with my group again. If I can sing, call and let me know. If I can't sing, call me and let me know, okay. I don't want to make no more mistakes, cause they're gonna be following me now. So if I can sing, call me let me know. If I can't sing, call me let me know, okay? William Joyner, 1804 Elkins Street. Thank you.

Trial court slip opinion at p. 5.

The Joyners' attorney filed a motion in limine to preclude the admission of this tape-recorded message as coming within the attorney-client privilege. The trial

court denied the motion. The trial court also denied the Joyners' request for a jury instruction on res ipsa loquitur. The jury returned a verdict for SEPTA. The Joyners filed post-trial motions for a new trial or in the alternative a motion for a judgment notwithstanding the verdict. The trial court denied these post-trial motions. From the trial court's order denying their post-trial motions, the Joyners now appeal to this court.[1]

The first issue which the Joyners raise is: did the trial court err in admitting into evidence a voicemail message intended to be a confidential communication from a client to his attorney, which was inadvertently left on the voicemail of a third party, which is protected by the attorney client privilege? Appellant's brief at p. viii.

■ The attorney client privilege is codified in the Commonwealth at 42 Pa.C.S. § 5928 which provides that

[i]n a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon trial by the client.

As the trial court held and SEPTA points out, the plain language of the statutory privilege is not applicable. Here, Brad Moss was not the Joyners' attorney, thus SEPTA was not precluded by the plain language of the statute from presenting evidence of what Mr. Joyner stated to Brad Moss's voice mail. Because Mr. Joyner was not Brad Moss' client there was no "confidential communication made to him [i.e. Brad Moss] by his **client**" within the meaning of the statute.

■ The Joyners argue however that the attorney client privilege must cover not only confidential communications actually made between a client and his attorney but also all confidential communications which the client **intends** to be directed to his attorney. Citing *Triffin v. DiSalvo*, 434 Pa.Super. 326, 643 A.2d 118 (1994), *allocatur denied*, 541 Pa. 627, 661 A.2d 874 (1995), the Joyners argue that where a person sufficiently believes he is consulting an attorney, the attorney client privilege applies even where the so-called attorney is not in fact an attorney.

In *DiSalvo*, a person who graduated from law school but who had not been admitted to any bar held himself out as an attorney. The Superior Court held that those persons consulting with the so-called attorney could claim the attorney client privilege so as to bar the so called attorney from testifying as to their communications with him. The Joyners argue that "it reasonably follows [from the principles announced in *DiSalvo* ] that, when a person believes he is leaving a message for his own attorney, where he manifests the intent to seek legal advice in the message, the privilege must also apply." Appellants' brief at p. 7.

The trial court found, and SEPTA asserts that *DiSalvo* is not controlling here. We agree. In *DiSalvo*, the clients of the so-called attorney established that they reasonably believed that they were communicating with an attorney, seeking legal advice. They detrimentally relied upon the so-called attorney's misrepresentations to form their reasonable belief. Unlike here, Mr. Joyner failed to establish the reasonableness of his subjective belief that he was communicating with his attorney, Brad Cooper.[2] Thus, *DiSalvo* does not

---

1. This court's appellate review over a trial court's ruling on post trial motions for a judgment notwithstanding the verdict or for a new trial is limited to determining whether the trial court abused its discretion or committed an error of law. *Marker v. Department of Transportation*, 677 A.2d 345 (Pa.Cmwlth.

1996), *allocatur denied*, 546 Pa. 671, 685 A.2d 549 (1996).

2. As part of his burden of establishing that the attorney-client privilege was properly invoked in the first place, it was Mr. Joyner's burden to establish that he reasonably believed that the voicemail was his attorney's. See foot-

require a finding that the trial court abused its discretion or committed an error of law in permitting Mr. Joyner's communication to come in as evidence.

■ The Joyners also argue that the attorney client privilege was not waived herein by Mr. Joyner's mere inadvertent communication to SEPTA's counsel, asserting that in order for a waiver of the privilege to occur, it must be knowing and intentional. We need not reach this issue, because as a prerequisite to the analysis of whether the privilege was waived, it was incumbent upon the Joyners to first establish the existence of the attorney client relationship which then could have been waived. *See, e.g., In re Subpoena No. 22,* 709 A.2d 385, 388 (Pa.Super.1998), *allocatur granted,* 553 Pa. 231, 718 A.2d 1245 (1998) ("[o]nce the party asserting a privilege shows that the privilege is properly invoked, the burden shifts to the party seeking disclosure to show that the disclosure of the information will not violate the privilege."). *See also,* 2 Henry, *Pa. Evidence,* § 693 (4 th ed.1953) ("[p]rima facie, all professional communications are privileged and the burden is on one who alleges a particular case is an exception to the general rule, to prove it. But it must first

be shown that the relation of attorney and client existed.")(footnotes omitted). As we have already concluded that the Joyners failed to establish the existence of an attorney client relationship, the attorney client privilege was not applicable.[3]

The Joyners also argue that the trial court erred in failing to make a factual finding regarding the existence of the privilege or the waiver of the privilege. We find the premise to be unsound, it is clear the trial court found that the privilege did not exist. *See* Trial court opinion at p. 6 ("the communication was not such a confidential communication as was protected under the statute.").

■ Our disposition effectuates the principle that evidentiary privileges are to be narrowly construed. *See, e.g., Commonwealth v. Stewart,* 547 Pa. 277, 282, 690 A.2d 195, 197 (1997):

"[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Hutchison v. Luddy,* 414 Pa.Super. 138, 146, 606 A.2d 905, 908 (1992)(quoting *Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979)).

note 3 and its accompanying text infra, explaining that it is initially the burden of the one asserting the privilege to establish that it was properly invoked.

**3.** The Joyners also assert that the burden of proving that the privilege did not exist was upon SEPTA, citing, *Commonwealth v. Maguigan,* 511 Pa. 112, 511 A.2d 1327 (1986). However, this is not an accurate statement of the rule found in *Maguigan. Maguigan* did not state the party seeking to have the information disclosed must first prove the non-existence of the privilege, rather, the Court in *Maguigan,* stated that "the burden of proof is upon the party asserting that disclosure of the information would not violate the attorney-client privilege.... 2 G. Henry, *Pa. Evidence,* § 693 (4 th ed.1953)." *Maguigan,* 511 Pa. at 125, 511 A.2d at 1334. Given that the *Maguigan* Court cited 2 Henry *Pa. Evidence* § 693 with approval, it is apparent what the Court's words meant, that the party asserting the privilege has the initial burden to prove that it is properly invoked and the party seeking to overcome the privilege has the burden to

prove an applicable exception to the privilege. Accordingly, the burden was first on the Joyners to establish the existence of the privilege before the burden then shifted to SEPTA to prove that disclosure would not violate the privilege. Thus, *Maguigan* establishes that once the party asserting the privilege establishes that it is properly invoked, then it becomes the burden of the other party to prove why the applicable privilege would not be violated by the disclosure, e.g., the privilege was waived, an exception to the privilege exists and is applicable, etc. Because the Joyners never met their burden to establish that the privilege was applicable herein, the burden never shifted to SEPTA to produce evidence to show disclosure would not violate the privilege because, e.g., the privilege was waived or an exception existed, etc. Before a party should have the burden to prove why disclosure does not violate a privilege, it should be proven that the privilege is properly invoked in the first place.

Thus, courts should accept testimonial privileges "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *In re Grand Jury Investigation,* 918 F.2d 374, 383 (3d Cir.1990)[.]

Moreover, our disposition does not frustrate the purpose of the attorney client privilege which is to encourage frank and open discussion between a client and his attorney. *See, e.g., Estate of Kofsky,* 487 Pa. 473, 409 A.2d 1358, 1362 (1979)("its purpose is to foster a confidence between client and advocate that will lead to a trusting and open attorney-client dialogue.")(footnote omitted). Rather, our disposition has the salutary effect of encouraging parties to take reasonable steps to assure that the individual they wish to communicate with is in fact their attorney.

The second question which the Joyners present for our review is: did the trial court err in failing to charge the jury on the doctrine of res ipsa loquitur where the evidence supported that the doctrine was applicable and each required element was established by the Joyners at trial? See Appellant's brief a p. viii.

█ Res ipsa loquitur requires the following:

[i]t may be inferred that harm suffered by the plaintiff is caused by the negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third person are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

*Gilbert v. Korvette, Inc.* 457 Pa. 602, 327 A.2d 94 (1974)(adopting this section of the Restatement (Second) Torts concerning res ipsa loquitur as Pennsylvania law). The Joyners argue that they met their burden to prove all three requirements for the application of the doctrine. The trial court found and SEPTA argues that the Joyners did not prove that all three of the requirements were met. We agree.

█ The trial court found and we agree that the Joyners failed to sufficiently eliminate other responsible causes. Thus, the second requirement for application of res ipsa loquitur was not satisfied. However, the Joyners argue that "SEPTA admitted in its Response to Plaintiffs' Motion in Limine at paragraph 4 (R. 51a), that there is no evidence that plaintiff or any third party was responsible for the pole falling." Appellant's brief at p. 14. The Joyners suggest that this helps them to meet their burden to prove the applicability of the doctrine. However, their burden was to affirmatively produce some evidence that sufficiently eliminated other responsible causes. The mere fact that there was no evidence showing a third party was responsible is not sufficient to meet their burden. There is a significant difference between saying, "no evidence was produced to show another party was responsible" and "I have produced evidence to show that there were no other responsible parties." *See, e.g., Hoover v. Department of Transportation,* 725 A.2d 1254 (Pa. Cmwlth.1999)(where party with burden of proof fails to produce any evidence regarding a necessary element of its case, the party loses). The absence of evidence on a point concerning which a party has the burden of proof works to that party's detriment.

As the Joyners have failed to demonstrate the trial court committed an error of law or abused its discretion, the trial court is affirmed.

### *O R D E R*

AND NOW, this 22nd day of July, 1999, the order of the Court of Common Pleas of Philadelphia County, docketed at No. 817

1996, May Term, Civil Division, and dated June 17, 1998 is hereby affirmed.