**Ryan BAGWELL, Petitioner**

**v.**

**PENNSYLVANIA DEPARTMENT OF EDUCATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2014.

Decided Oct. 31, 2014.

Reargument Denied Dec. 18, 2014.

Joshua D. Bonn, Harrisburg, for petitioner.

Robert L. Byer, Pittsburgh, for intervenor Pennsylvania State University.

BEFORE: DAN PELLEGRINI, President Judge, BERNARD L. McGINLEY, Judge, ROBERT SIMPSON, Judge, PATRICIA A. McCULLOUGH, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge ROBERT SIMPSON.

This is a Right–to–Know Law (RTKL)[1] appeal from a final determination of the Office of Open Records (OOR) that denied access to certain information under the attorney-client privilege and the work-product doctrine. Ryan Bagwell (Requester) sought records from the Department of Education (Department) regarding correspondence sent to the Secretary of Education (Secretary) as an *ex officio* member of the Pennsylvania State University (PSU) Board of Trustees (Board). The request implicates the scandal involving former PSU football coach Jerry Sandusky, and the related investigation conducted by the law firm of Freeh Sporkin & Sullivan LLP (Freeh).

PSU submitted material as a party with a direct interest. The OOR reviewed the records to which PSU and the Department asserted the privileges *in camera.* Based on its review, OOR directed disclosure of certain records, but it agreed the majority

---

**1.** Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

of the records fell within the privileges. Requester argues that OOR applied the privileges too broadly, and that some elements are not met. Requester also asserts PSU waived the privileges by disclosing the subject-matter to third parties, including to the public in the Freeh Report. Requester also seeks fees under the RTKL. Based on the legal challenges raised here, we affirm.

## I. Background

Pursuant to the RTKL, Requester submitted a request for records from the Department seeking "all letters, memos, reports, contracts and emails sent to former Secretary Ron Tomalis and/or his assistant Jane Shoop between November 5, 2011 and July 31, 2013 from any of the following individuals:

1. Louis Freeh [counsel] . . .
2. Omar McNeill [counsel] . . .
3. Kenneth Frazier [PSU Board member] . . .
4. Annette DeRose [Frazier's assistant] . . .
5. Paula Ammerman [PSU Board member] . . .
6. Karen Peetz [PSU Board member] . . . [and]
7. Steve Garban [PSU Board member].

Reproduced Record (R.R.) at 4a (Request).

The Department denied the Request in part based on the attorney-client and attorney work-product privileges, and based on several RTKL exceptions. The Department provided some responsive records and additional records in redacted form. It also submitted an index that identified withheld records by date range, partici-pants, email subject line, and reason for denying access (Index).

Requester appealed to OOR as to the records withheld in their entirety, and he asked OOR to review the withheld records *in camera*. The Department submitted 673 pages of responsive records to OOR for *in camera* review. The Department asserted the privileges and exceptions should be applied to protect the records sent to the Secretary as a member of PSU's Board.

PSU submitted materials to participate as an entity with a direct interest under Section 1101(c) of the RTKL, 65 P.S. § 67.1101(c). As part of its materials, PSU submitted a position statement identifying various counsel, both in-house and private firms, who were hired to investigate legal matters or to provide legal advice. PSU advised that Freeh was engaged as counsel to the Board and to the Special Investigative Task Force of the Board.[2]

PSU provided an affidavit from legal counsel Frank Guadagnino (Guadagnino) explaining the Secretary's role and fiduciary duty to PSU. PSU submitted another affidavit of Jane Andrews, Director of the Office of the Board, attesting that none of the documents identified as privileged were disclosed to third parties (Andrews Affidavit).

In response to Requester's contention that PSU did not properly invoke the privileges, PSU submitted a supplemental affidavit from Guadagnino that Freeh did not reveal privileged information to third parties. Guadagnino represented that although Freeh provided periodic updates of its investigation to the National Collegiate

**2.** In addition to the exceptions asserted by the Department, PSU asserted certain records are exempt as criminal investigative records, confidential proprietary information, and as communications with an insurance carrier. PSU raised the Family Education Rights and Privacy Act, 20 U.S.C. § 1232g (FERPA) to support redaction as well. PSU also submitted its own index, later revised, outlining these grounds to protect the records at issue.

Athletic Association (NCAA) and to the Big Ten Conference, neither entity revealed privileged information. As a result, PSU asserted certain withheld records were protected under either the attorney-client privilege or the work-product doctrine.[3]

To OOR, Requester argued the attorney-client privilege did not attach to records sent from Freeh because PSU hired Freeh for its fact-finding expertise, not legal advice. In the alternative, Requester contended that to the extent a privilege existed, PSU waived any privileges by permitting Freeh to discuss matters involving the same subject with third-party organizations and government entities.

The day before OOR issued its final determination, Requester asked OOR to hold a hearing regarding applicability of the privileges, and to receive proof of the alleged waiver.[4] OOR denied the request "because [it] ha[d] the necessary, requisite information and evidence before it to properly adjudicate the matter." See Bagwell v. Dep't of Educ. & PSU, OOR Dkt. No. AP 2013–1753, 2013 WL 6841605 (Pa. OOR, filed December 20, 2013), (Final Determination) at 6.

Based on its in camera review, OOR concluded certain records are protected by the attorney-client privilege and/or attorney work-product doctrine. OOR found that PSU did not waive any privilege.

OOR also determined that certain material qualified as work-product; therefore, that material could be redacted from additional pages. See Final Determination at 9–10. The majority of the protected records are described as communications from counsel. In its Final Determination, OOR characterized these redactions as reflecting attorney opinions or mental impressions. Id. at 9.

OOR concluded the remaining records or parts of records were not privileged because they did not qualify as mental impressions, or were not made for the purpose of securing legal assistance, or were not made by a party's attorney. OOR reasoned that none of the RTKL exceptions under Section 708(b) applied to protect the records because the exceptions only apply to an agency, not to PSU.[5]

Requester appealed, asserting that the work-product privilege is reserved for material prepared in anticipation of litigation, and that PSU waived the privileges. Prior to briefing, Requester filed an application for relief for permission to conduct discovery or for an evidentiary hearing regarding PSU's waiver of the privileges. This Court, speaking through President Judge Pellegrini, denied the application. On the record before us,[6] we review this matter in our appellate capacity.

---

3. The following records were withheld based on the privileges: 1–124, 127–130, 140–217, 228–247, 255–259, 317–377, 379–401, 403–406, 417–423, 573–583, 588–591, 612–613 and 640–657.

4. On December 19, 2013, the Dauphin County Court of Common Pleas unsealed the grand jury testimony of former PSU general counsel Cynthia Baldwin. The testimony contained statements regarding PSU's waiver of attorney-client privilege as to communications pertaining to PSU's compliance with the Attorney General's Sandusky investigation.

5. Records received by the Secretary may be protected under applicable RTKL exceptions. Such is the consequence of our core holding in Bagwell v. Department of Education, 76 A.3d 81 (Pa.Cmwlth.2013) (en banc).

6. This Court did not review the unredacted records that OOR reviewed in camera. Indeed, those documents are not included in the certified record.

## II. Issues

During oral argument, this Court confirmed there are two legal issues before us: [7] first, whether OOR erred in exempting certain records under the work-product doctrine when there is no evidence that such records were prepared in anticipation of litigation; second, whether OOR erred by finding that PSU did not waive any privilege when it entered waiver agreements with third parties and disclosed materials pertaining to the same subject matter. In the event this Court finds in his favor, Requester also seeks attorney fees under the RTKL, asserting PSU acted in bad faith by not producing evidence showing its waiver of the privilege.

## III. Discussion

■ Although this Court may exercise jurisdiction as a fact-finder, and make independent findings based on its review of the evidence, *Bowling v. Office of Open Records*, 990 A.2d 813 (Pa.Cmwlth.2010), *aff'd*, 621 Pa. 133, 75 A.3d 453 (2013), that is unnecessary when we are presented with pure matters of legal construction. For a question of law, our scope of review is plenary. *Dep't of Corr. v. Office of Open Records*, 18 A.3d 429 (Pa.Cmwlth.2011). This appeal challenges OOR's legal interpretation of the privileges invoked under specified circumstances.

■ This Court previously determined that records sent to the Secretary in his *ex officio* capacity as a PSU Board member on behalf of the Department are records received by an agency within OOR's jurisdiction. *Bagwell v. Dep't of Educ.*, 76 A.3d 81 (Pa.Cmwlth.2013) (*en banc*). Thus, the fact that PSU is not defined as an "agen-

cy" by the RTKL is immaterial to the application of any exemptions, which inure to records of the Department. *Id.* Ultimately, the RTKL imposes a duty of disclosure on the Department as to any public records in its possession.[8] *Bowling.*

■ Under the RTKL, records in possession of a Commonwealth agency are presumed to be public unless they are: (1) exempt under Section 708 of the RTKL; (2) *"protected by a privilege;"* or, (3) exempt under any other Federal or State law or regulation or judicial order or decree. Section 305 of the RTKL, 65 P.S. § 67.305 (emphasis added). Section 102 of the RTKL defines "privilege" as:

> The *attorney work-product doctrine*, the *attorney-client privilege*, the doctor-patient privilege, the speech and debate privilege or other privilege recognized by a court incorporating the laws of this Commonwealth.

65 P.S. § 67.102 (emphasis added). The burden of proving a privilege rests on the party asserting it. *Heavens v. Dep't of Envtl. Prot.*, 65 A.3d 1069 (Pa.Cmwlth. 2013).

As background, the Department represented that a number of the records were sent to the Secretary in his role as co-chairperson of the Task Force investigating the Sandusky scandal. As part of that investigation, PSU engaged attorneys. Specifically, the Board hired Freeh to be counsel to the Task Force, and hired the law firm of Reed Smith as special counsel to advise the Board as to various matters arising out of the allegations regarding misconduct by senior administration officials and Sandusky.

---

**7.** Notably, Requester did not raise a challenge based on the content of the withheld records. Thus, it is unnecessary for this Court to conduct its own *in camera* review of the unredacted records.

**8.** The Department elected not to participate in this appeal, leaving the defense of the privileges to PSU.

Pursuant to his role overseeing PSU, the Secretary received records pertaining to the PSU Board. As a Board member, the Secretary falls under the client umbrella and is protected by the privileges. Because the records are only sought in his capacity as a Board member, there is no impediment to applying the attorney-client and work-product privileges to records received by the Secretary as a member of the Board, to the extent they otherwise qualify as privileged.

Here, Requester challenges protection of emails that discussed Freeh's investigation as work-product or under the attorney-client privilege. He contends materials compiled to cooperate with an external investigation, and completion of a public report, are not prepared "in anticipation of litigation." Requester also argues PSU waived privileges by disclosing parts of the findings and conclusions to third parties, including the public. Further, PSU entered a waiver agreement with the Office of the Attorney General that allowed disclosure of privileged communications in grand jury testimony. Given these facts, Requester asserts PSU did not prove non-waiver of the privileges as to Freeh's investigation.

PSU counters that Requester misstates the burdens of proof with regard to waiver of a privilege. PSU represents it never disclosed the specific records at issue here to a third party. Further, it refutes that the requested records are within the limited waivers and disclosures made in response to the grand jury investigation. In addition, PSU argues Pennsylvania law does not recognize subject-matter waiver of the attorney-client or work-product privileges.

## A. Attorney Work–Product Doctrine

 The work-product doctrine, while closely related to the attorney-client privi-lege, provides broader protection. *Levy v. Senate of Pa. (Levy III)*, 94 A.3d 436 (Pa.Cmwlth.2014); *Dages v. Carbon Cnty.*, 44 A.3d 89 (Pa.Cmwlth.2012). Confidential information flows from the client to the attorney, and vice versa, in the attorney-client relationship. *Gillard v. AIG Ins. Co.*, 609 Pa. 65, 15 A.3d 44 (2011). The attorney-client privilege protects such confidential communications. *Id.* By contrast, work-product privilege only applies to records that are the work-product of an attorney, and may extend to the product of an attorney's representative secured in antici-pation of litigation. *Rittenhouse v. Bd. of Sup'rs* (Pa.Cmwlth., No. 1630 C.D.2011, filed April 5, 2012), 2012 WL 8685549, 2012 Pa. Commw. Unpub. LEXIS 248 (applying Pa. R.C.P. No. 4003.3 in RTKL context) (work product extends to investigator's re-port prepared for litigation). Neither privilege protects mere facts. *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (privilege extends only to communications and not to underlying facts); *Commonwealth v. Vartan*, 557 Pa. 390, 733 A.2d 1258 (1999).

Under the Pennsylvania Rules of Civil Procedure, the work product doctrine provides that a party may obtain discovery of material prepared in anticipation of litigation or trial by a party's attorney, but discovery "shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." Pa. R.C.P. No. 4003.3.

 At the core of the work-product doctrine is that "attorneys need a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Commonwealth v. Kennedy*, 583 Pa. 208, 876 A.2d 939, 945 (2005) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). "The

underlying purpose of the work product doctrine is to guard the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case." *Commonwealth v. Sandusky,* 70 A.3d 886, 898 (Pa.Super.2013).

■■ The work-product doctrine also "protects materials prepared by agents for the attorney." *Kennedy,* 876 A.2d at 945 (quoting *U.S. v. Nobles,* 422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)); *Commonwealth v. Hetzel,* 822 A.2d 747, 757 (Pa.Super.2003). This includes an attorney's "[investigator's or other agent's] opinions, theories, or conclusions" as part of preparing his client's case. *Sandusky,* 70 A.3d at 898.

■■ In the RTKL context, this Court recently held the work-product doctrine protects the "mental impressions, theories, notes, strategies, research and the like created by an attorney in the course of his or her professional duties, *particularly in anticipation or prevention of litigation"* from disclosure. *Levy III,* 94 A.3d at 443 (emphasis added) (citing *Heavens* ). Moreover, the "doctrine protects any material prepared by the attorney 'in anticipation of litigation,' regardless of whether it is confidential." *Dages,* 44 A.3d at 93 n. 4 (quoting *Nat'l R.R. Passenger Corp. v. Fowler,* 788 A.2d 1053, 1065 (Pa.Cmwlth. 2001)).

Our Supreme Court also previously "held that, to the extent material constitutes an agency's work product, it is not subject to compulsory public disclosure pursuant to the RTKL." *In re Thirty–Third Statewide Investigating Grand Jury,* —— Pa. ——, 86 A.3d 204, 225 (2014)

(citing *LaValle v. Office of Gen. Counsel,* 564 Pa. 482, 769 A.2d 449, 459 (2001) (decided under former RTKL [9])).[10]

Against this backdrop, we analyze whether work-product protection applies when the work product at issue was created by a law firm engaged to investigate allegations that subsequently became the subject of lawsuits.

Requester urges this Court to accept his novel construction of the doctrine to limit work-product protection to *only* those records that are "prepared in anticipation of litigation." Requester presents the "in anticipation of litigation" part of the description of attorney work product as a prerequisite, without which the doctrine may not apply.

The anticipation of litigation part of the work-product doctrine is not an absolute requirement, as discussed by (now President) Judge Pellegrini in the single judge opinion in *Sedat v. Department of Environmental Resources,* 163 Pa.Cmwlth. 29, 641 A.2d 1243 (1994) (single j. op.). After recognizing that government in-house counsel are entitled to exercise the privileges, Judge Pellegrini reasoned that a memorandum containing legal analysis of a court decision prepared for other agency lawyers, without reference to specific litigation, is protected by the work-product doctrine.

Analyzing Pa. R.C.P. No. 4003.3, Judge Pellegrini determined that the Rule contains no condition precedent of "anticipated litigation" for the doctrine to attach. Judge Pellegrini explained, "[t]he Rule's protection of an attorney's mental impres-

---

9. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.9 (repealed by RTKL).

10. Under the former RTKL, Pennsylvania senators sought access to a report prepared by an accounting firm for a Commonwealth agency during the course of litigation against that agency by a contractor. Our Supreme Court protected the report, reasoning the privilege removed it from the definition of public record.

sions is unqualified." *Id.* at 1245. He noted that agency counsel frequently face the same issues, and so may "carry over" their work product from earlier litigation. *Id.*

Requester's construction restricts the doctrine, whereas decisional law does not. Our Supreme Court explained that discovery of material prepared in anticipation of litigation may be obtained provided it does not include an attorney's mental impressions or opinions. This Court similarly enunciated the protection as including materials prepared in anticipation of litigation. *Levy III; Heavens.* Contrary to Requester's assertion, that expression does not limit the doctrine to *only* materials prepared in anticipation of litigation. Rather, "materials prepared in anticipation of litigation" constitutes an example of the doctrine's coverage. Materials do not need to be prepared in anticipation of litigation for work-product privilege to attach.

Therefore, this Court rejects Requester's invitation to constrain application of work product to the litigation context. Such a confined construction would render attorney drafts of contracts, memoranda and countless other examples of work product, prepared in a transactional or any non-litigation capacity, susceptible to discovery or disclosure.

Because we hold the work-product privilege is not limited to the litigation context, PSU did not need to establish that Freeh was retained in anticipation of litigation. Nevertheless, given the surrounding circumstances and the impact of the Sandusky scandal on a national scale, it is apparent that PSU anticipated related litigation. Preparation for litigation was underway, albeit with other counsel handling the litigation aspect.

Requester also implies that facts discovered in the course of an investigation are not protected as work product. *See* Pet'r's Br. at 19–20 n. 6. However, it is clear from OOR's description of the material redacted as work product that they consist of mental impressions and opinions, not mere facts. *See* Final Determination at 9.

Eliminating any doubt as to a litigation requirement, there is no dispute that an attorney's mental impressions are protected work product. Accordingly, OOR's conclusion upholding the redaction of mental impressions from emails authored by counsel as work product is affirmed.

### B. Waiver of Privileges

During oral argument, Requester essentially conceded that the attorney-client privilege applied to the records at issue. Having concluded OOR properly applied the work-product privilege, we next consider whether PSU waived either of these privileges by disclosing information pertaining to the same subject, the Sandusky scandal. We start with a review of waiver in the context of each privilege generally.

██ Once attorney-client communications are disclosed to a third party, the attorney-client privilege is deemed waived. *Commonwealth v. Chmiel,* 558 Pa. 478, 738 A.2d 406 (1999); *Joe v. Prison Health Servs., Inc.,* 782 A.2d 24 (Pa.Cmwlth.2001); *see also United States v. Fisher,* 692 F.Supp. 488 (E.D.Pa.1988) (any voluntary disclosure by the holder of the privilege that is inconsistent with the confidential nature of the relationship thereby waives the privilege). Similarly, our Supreme Court holds that "the work-product doctrine is not absolute but, rather, is a qualified privilege that may be waived." *Kennedy,* 876 A.2d at 945; *see Sandusky,* 70 A.3d at 900 n. 15. "What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances." *Nobles,* 422 U.S. at 238–40, 95 S.Ct. 2160.

Under traditional waiver doctrine, voluntary disclosure to a third party waives the attorney-client privilege, *Joe*, even if the third party agrees not to disclose the communications to others. *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414 (3d Cir.1991). The waiver extends to the communication disclosed.

That PSU's disclosure was deliberate is undisputed; instead, the parties contest the impact of specific disclosures on non-disclosed materials. Requester contends PSU deliberately disclosed the *subject-matter* of the communications sought here to third parties, including law enforcement and the public. That disclosure, Requester asserts, suffices to destroy the protection afforded by the attorney-client privilege or work-product privilege.

PSU does not dispute that the content of the communications protected involves the same subject matter. PSU emphasizes that the *records themselves* have not been disclosed to third parties, and that such a broad waiver should not be adopted in Pennsylvania. PSU argues that with a deliberate disclosure, the waiver may be limited in scope so as not to destroy the privilege.

### 1. Type of waiver (Selective v. Subject-matter)

Under federal decisional law, the general rule regarding the voluntary disclosure of privileged attorney-client communications is that the disclosure waives the privilege as to all other communications on the same subject. *Nationwide Mut. Ins. Co. v. Fleming*, 605 Pa. 468, 992 A.2d 65 (2010) (op. in support of affirmance; equally divided court); *Helman v. Murry's Steaks, Inc.*, 728 F.Supp. 1099 (D.Del.1990). The rationale underlying the waiver of the attorney-client privilege in this situation is one of "fairness." *Kel-sey–Hayes Co. v. Motor Wheel Corp.*, 155 F.R.D. 170, 172 (W.D.Mich.1991). Courts recognize that, in litigation, it would be fundamentally unfair to allow a party to disclose opinions that support its position and to simultaneously conceal those that are unfavorable or adverse to its position. *Katz v. AT & T Corp.*, 191 F.R.D. 433 (E.D.Pa.2000); *Saint–Gobain/Norton Indus. Ceramics Corp. v. Gen. Elec. Co.*, 884 F.Supp. 31 (D.Mass.1995).

In *Fleming*, in the opinion in support of affirmance, Justices Eakin and Baer reasoned that the attorney-client privilege is waived by disclosing documents reflecting the same subject as the withheld documents. The Justices explained a party in litigation may not selectively disclose records that help its position, while protecting others on the subject as privileged, because to do so is to wield the privilege as both a sword and a shield. To do so is fundamentally unfair to the opposing party, in addition to not serving the interest in candor to the courts.

Requester predicates his waiver argument on testimony before the grand jury, unsealed two days before OOR issued its determination. Former Deputy Attorney General Frank Fina explained that Penn State waived the attorney-client privilege so PSU and retired Justice Baldwin could cooperate with the Attorney General. Fina stated,

> It was a waiver focused upon the issues of Gerald Sandusky, his relationship with the University, any conduct of his that was known by the University, and it extended to the contacts between the University and this grand jury and investigators, again, looking into Gerald Sandusky, his personal conduct, his— any alleged misconduct and indeed also the acts of the University in compliance or noncompliance with investigative ef-

forts. All of those issues were opened to us to discuss with [Justice] Baldwin. *See* Pet. for Review (quoting Transcript of Proceedings of Grand Jury taken on October 22, 2013, at 3–4). Although these materials were submitted after the record closed, OOR considered them as part of the record. Final Determination at 5. However, it did not discuss their impact on its conclusion of no waiver.

From review of the correspondence submitted by Requester (Certified Record, Item No. 20, email dated 12/19/13), he based his allegations of waiver of the privilege by Freeh on the communications by Justice Baldwin. Requester did not submit any evidence of waiver by Freeh. Requester alluded to waiver agreements, whereby PSU limited the waiver of the privilege by agreement.

Assuming for current purposes that PSU allowed Freeh to waive the privilege as to specific information, provided in a specific form, such limited waiver would not waive the privilege as to the records sought here unless this Court applies a broad subject-matter waiver. This Court declines to apply subject-matter waiver here for a number of reasons.

First and foremost, Pennsylvania courts have not adopted subject-matter waiver.

Second, subject-matter waiver, to the extent it is recognized, applies where the parties seeking disclosure are adversaries in litigation. Here, however, PSU is not using its selective disclosures as weapons to the detriment of Requester. Unlike a party seeking waiver of the privilege in a discovery dispute or otherwise in litigation, Requester claims no punitive effect from PSU's selective disclosure. Therefore, the "fairness" reasons for imposing a broad subject-matter waiver do not exist here.

Third, there is no evidence that Freeh waived the privilege as to the content of the records sought. PSU's counsel represented that it communicated no privileged information to the NCAA or Big Ten Conference; rather, PSU provided status updates. R.R. at 236a–37a (Guadagnino affidavit). Requester presumes the content of the records requested matches the disclosures sufficiently so as to qualify for subject-matter waiver.

Moreover, Pennsylvania courts recognize selective waiver in the context of work product. In *Commonwealth v. Sandusky,* our Superior Court held that the core purpose of the work-product doctrine was not violated by a limited disclosure "to the Court and to the Supervising Judge of the Grand Jury." *Com. v. Sandusky,* 70 A.3d at 898. The information was disclosed pursuant to a court order. Under such circumstances, where the disclosure was very limited, the work-product privilege remained intact and was not waived for other purposes.

Our Supreme Court addressed the issue of selective disclosure as a means of waiving the work-product privilege in *LaValle v. Office of General Counsel.* In *LaValle,* the Office of General Counsel (OGC) permitted access to a consultant report prepared in anticipation of litigation to certain members of the General Assembly. Our Supreme Court reasoned that the record was insufficient to show that the report as a whole was disclosed and was also deficient as to the extent or manner of disclosure as would be necessary to evaluate waiver. However, in *LaValle,* the "uncontested status of the report as work product" removed it from the category of records subject to disclosure.[11] *Id.* at 460.

11. This part of the *LaValle* decision depends upon the limited definition of public records

under the former RTKL. Notably, the current RTKL removes privileged records from the

In assessing waiver, the context and content of disclosure are material. Applying our Supreme Court's affirmance reasoning in *Fleming*, we conclude the circumstances here do not warrant waiver of the privileges. The circumstances here weigh in favor of selective or limited waiver, retaining the privileged nature of the records where they contain mental impressions.

### 2. Burden of proving waiver

■ Lastly, Requester contends he should not bear the burden of proving waiver. Imposing such a burden on a requester in the scope of a RTKL appeal, which affords no evidentiary discovery and limited due process, puts a requester at a procedural disadvantage.

■ The confusion regarding who bears the burden of proving waiver of a privilege is understandable. Absence of waiver is one of the elements required to establish the privilege.[12] *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259 (Pa.Super.2007), *aff'd by an equally divided court*, 605 Pa. 468, 992 A.2d 65 (2010).

■ However, when waiver is the focus of a dispute, the burden is shifted to the party asserting waiver. *See Joe; Joyner v. Southeastern Pa. Transp. Auth.*, 736 A.2d 35 (Pa.Cmwlth.1999). Acknowledging the burden shift in non-RTKL cases, Pet'r's Reply Br. at 1, Requester nonetheless asks this Court to alter that

burden in RTKL cases so that the burden remains on the agency to disprove public nature. He asserts imposing such a burden on a requester undermines due process because a requester has no opportunity to gather evidence to establish the facts he must prove through the limited process offered by the RTKL.

While recognizing the procedural shortcomings of the RTKL, we disagree that RTKL cases should be exempt from the burden shift applied to privilege challenges. To carve out such an exception in privilege jurisprudence for RTKL disputes would needlessly complicate RTKL adjudications and would undermine the applicability of established case law that assists agencies and OOR in determining how to assess privilege. Moreover, this Court recognizes case law construing attorney privileges applies in the RTKL context. *See Levy III.*

■ In addition, the RTKL requires a requester to address an agency's grounds for denial, thus imposing some burden on a requester. 65 P.S. § 67.1101(a); *Dep't of Corr. v. Office of Open Records*. Also, the presumption of public nature does not apply in cases of privileged records. *See* 65 P.S. § 67.305(a)(2). Thus, if a privilege is established, a record is exempt as to the privileged information. An agency lacks the discretion to provide access to a privileged record. *See* Section 506(c) of the RTKL, 65 P.S. § 67.506(c). Acknowl-

---

presumption of openness in Section 305 of the RTKL, and excludes privileged records from the definition of public records in Section 102 of the RTKL.

12. The four elements are:

(1) The asserted holder of the privilege is or sought to become a client.

(2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

(3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

(4) The privilege has been claimed and is not waived by the client.

*Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259 (Pa.Super.2007), *aff'd by an equally divided court*, 605 Pa. 468, 992 A.2d 65 (2010).

edging these statutory provisions, altering existing law regarding the burden of proof in RTKL privilege cases is not justified.

Regardless, Requester did not allude to evidence establishing that PSU disclosed to third parties the specific records and redactions at issue here. The evidence of record, in the form of the Andrews and Guadagnino affidavits, establishes that the disputed records themselves were not disclosed. Although PSU disclosed or permitted disclosure of information pertaining to the same subject, we decline to apply subject-matter waiver principles to this case.

### C. Fees Request

Lastly, Requester asks this Court to impose attorney fees. Pursuant to Section 1304(a) of the Law, 65 P.S. § 67.1304(a), if a court reverses a final determination, it may impose penalties on the agency when the agency acted with willful or wanton disregard of the right to access in bad faith, or its denial was not based on reasonable interpretation of law.

As this Court is affirming the final determination, the prerequisite for a fee award under this provision of the RTKL is not met. *See* 65 P.S. § 67.1304(a); *Chambersburg Area Sch. Dist. v. Dorsey*, 97 A.3d 1281 (Pa.Cmwlth.2013). Moreover, the Department's assertion of the privileges was not based on an unreasonable interpretation of law. Additionally, evidence of bad faith by the Department or by PSU is necessary to impose fees on that basis. There is no such evidence here.[13] *Barkeyville Borough v. Stearns*, 35 A.3d 91 (Pa.Cmwlth.2012).

---

13. Requester implies that PSU committed bad faith by omitting information from its submissions to OOR that would show it waived the privilege. However, this does not constitute bad faith when the confines of subject-matter

### IV. Conclusion

For the foregoing reasons, the final determination of OOR is affirmed. Regarding the redactions, OOR sufficiently described the content of the materials reviewed *in camera* to enable this Court to uphold its legal judgment without needing to review the documents. Regarding waiver of the privileges, there is no contention that PSU or the Department disclosed the specific records at issue. We further decline to recognize subject-matter waiver. As this Court did not reverse the final determination, Requester's request for attorney fees is denied.

Judges LEADBETTER, COHN JUBELIRER and BROBSON did not participate in this decision.

### *ORDER*

**AND NOW,** this 31st day of October, 2014, the final determination of the Office of Open Records is **AFFIRMED.** Further, Petitioner Ryan Bagwell's request for attorney fees is **DENIED.**

CONCURRING OPINION BY Judge McCULLOUGH.

I concur in the result reached by the Majority. I write separately to address my concerns regarding the record before the Office of Open Records (OOR) and to expound upon the Majority's discussion of whether, or under what circumstances, the attorney work-product and attorney-client privileges can be waived under the Right–to–Know Law (RTKL).[1]

Regarding the record created before the OOR, it is not clear the OOR had "the

---

waiver are neither established nor recognized by Pennsylvania law.

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

necessary, requisite information and evidence before it to properly adjudicate the matter," (op. at 413, citing OOR's Final Determination at 6), or that this Court would not benefit from a more developed record in resolving the legal issues presented in this case. (*See* op. at 413–14.)

Here, the OOR issued its final determination on December 20, 2013. The day before, the Court of Common Pleas of Dauphin County unsealed the grand jury testimony of Penn State University's (PSU's) former general counsel. This testimony related directly to the issue of PSU's purported waiver of attorney-client privilege. Requester immediately asked for a hearing in this regard but his request was denied by the OOR. The Majority notes that the OOR appears to have considered this grand jury testimony but concedes that the OOR did not discuss the impact that the testimony could have had on its conclusion that PSU did not waive the asserted privileges. (op. at 419.) While the OOR notes in its final determination that PSU and Requester "made various other submissions after the record closed in this matter" and that these submissions "will be considered as part of the record before the OOR," (OOR's Final Determination at 5), the OOR never identified what those records were and made no specific mention of the grand jury testimony. Nevertheless, given my conclusion below that waiver would not apply, as well as the OOR's discretion with respect to holding a hearing and accepting evidence which it deems probative, I cannot conclude that the OOR erred in this regard. *See Office of Open Records v. Center Township,* 95 A.3d 354 (Pa.Cmwlth.2014) (noting the discretion afforded to an OOR appeals officer to hold a hearing and accept and assess evidence that is deemed

probative); *Office of the Governor v. Scolforo,* 65 A.3d 1095 (Pa.Cmwlth.2013) (*en banc*) (noting that section 1101(b)(3) of the RTKL, 65 P.S. § 67.1101(b)(3), makes clear that the OOR has discretion to conduct a hearing).

Initially, the Majority notes that our Supreme Court has held that "the work-product doctrine is not absolute but, rather, is a qualified privilege that may be waived," (op. at 417, citing *Commonwealth v. Kennedy,* 583 Pa. 208, 876 A.2d 939, 945 (2005)), and states that "[o]nce attorney-client communications are disclosed to a third party, the attorney-client privilege is deemed waived." (Op. at 417 citing *Commonwealth v. Chmiel,* 558 Pa. 478, 738 A.2d 406 (1999)). The Majority then assumes that the attorney work-product and attorney-client privileges are waivable for purposes of the RTKL.

However, in a 2012 unpublished opinion, *Rittenhouse v. Board of Supervisors of Lower Milford Township,* 2012 WL 8685549 (Pa.Cmwlth., No. 1630 C.D.2011, filed April 5, 2012), this Court held that waiver principles did not apply to a requested document which constituted attorney work product and was not accessible in the first place, even if it was disclosed to other parties. In so holding, we relied on, and extended the reasoning of, our decision in *LeGrande v. Department of Corrections,* 920 A.2d 943 (Pa.Cmwlth.), *appeal denied,* 593 Pa. 751, 931 A.2d 659 (2007).[2]

In *LeGrande,* we held that the Department of Corrections' (DOC) Sentence Computation Procedures Manual (Manual) constituted attorney work product and, hence, by definition, was not a public record. Additionally, we held in *LeGrande* that even if DOC had disclosed the Manual to third parties, this disclosure would not

---

**2.** *LeGrande* was decided under the RTKL's predecessor statute, the Right to Know Act, formerly the Act of June 21, 1957, P.L. 390, 65 P.S. §§ 66.1–66.9.

convert the Manual into a public record. Citing *LaValle v. Office of General Counsel*, 564 Pa. 482, 769 A.2d 449 (2001), we explained that since work product does not fall under the definition of a "public record," waiver principles did not apply. We noted that "[a] waiver cannot transform a document, which is by definition not a public record, into a document that comports to the very same definition." *LeGrande*, 920 A.2d at 949. Further, we cited the holding of *LaValle* that "the character of the material as work product serves not as an exception to the disclosure of material which would otherwise qualify as accessible, in which case waiver principles might be pertinent, but rather, as a definitional limitation upon what would be accessible in the first instance. We find that, where records are not the *type* of materials within the [Law]'s initial purview, waiver principles cannot be applied to transform them into records subject to its coverage." *LaValle*, 769 A.2d at 460 (emphasis in original).

Somewhat akin to the definition of a "public record" under the former Right to Know Act,[3] the definition of a "public record" under the current RTKL does not include a record protected by a privilege, such as attorney work product and attorney-client communications. Additionally, while section 305(a) of the RTKL, 65 P.S. § 67.305(a), states the general rule that "[a] record in the possession of a Commonwealth ' agency or local agency shall be presumed to be a public record," section 305(a)(2), 65 P.S. § 67.305(a)(2), provides that the presumption shall not apply if "the record is. protected by a privilege." Notably, the attorney work-product and attorney-client privileges are not enumerated as "exemptions" under section 708 of the RTKL, 65 P.S. § 67.708. Rather, as discussed above, these privileges serve not "as an exception to the disclosure of material ... in which case waiver principles might be pertinent," but "as a definitional limitation upon what would be accessible in

**3.** Former section 1 of the Right to Know Act, 65 P.S. § 66.1, defined a "public record" as:

Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an. agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term "public records" shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would

operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

The current RTKL defines "privilege" and "public record" in section 102 as:

"Privilege." The attorney-work product doctrine, the attorney-client privilege, the doctor-patient privilege, the speech and debate privilege or other privilege recognized by a court interpreting the laws of this Commonwealth.

\*　　\*　　\*

"Public record." A record, including a financial record, of a Commonwealth or local agency that:

(1) is not exempt under section 708;

(2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or

(3) is not protected by a privilege.

65 P.S. § 67.102.

the first instance." *LaValle*, 769 A.2d at 460. Given *Rittenhouse*, and the cases upon which it relies, *LaValle* and *Le-Grande*, it is quite possible that the attorney work-product and attorney-client privileges can never be waived under the RTKL. However, I believe the Majority correctly declines to adopt such a bright-line rule and, instead, applies a selective/limited waiver.

Nevertheless, it is not clear to me how the Majority is applying our Supreme Court's affirmance in *Nationwide Mutual Insurance Co. v. Fleming*, 605 Pa. 468, 992 A.2d 65 (2010) (op. in support of affirmance; equally divided court), to "conclude the circumstances here do not warrant waiver of the privileges." (op. at 420.) In *Fleming*, both the opinion in support of affirmance and the opinion in support of reversal applied the subject matter waiver doctrine to the attorney-client privilege, but reached opposite conclusions. The opinion in support of affirmance ultimately held that the disclosure of two documents addressing the same subject matter as the requested document effectuated a waiver of the attorney-client privilege as to the requested document.[4] However, the opinion in support of affirmance did explain that subject matter waiver is grounded on the premise that a party cannot selectively disclose information to its advantage, thereby using the selective disclosure as both "a sword and a shield." 992 A.2d at 69 (citation omitted.) This opinion also noted that unless the limited disclosure is used in such a manner, the application of subject matter waiver would not be justified. *Id.*

In the present case, PSU is not using its selective disclosures as weapons to the detriment of Requester or any adverse party. Instead, PSU, through its legal counsel and chief investigator, the law firm of Freeh Sporkin & Sullivan, LLP, provided limited disclosures to certain law enforcement authorities and periodic updates of its investigation to the National Collegiate Athletic Association and the Big Ten Conference, which, according to the affidavit of Frank Guadagnino, another legal counsel for PSU, did not include privileged information. Such limited disclosures, coupled with the fact, as noted by the Majority, that Pennsylvania courts have not generally adopted the subject matter waiver doctrine, support the Majority's application of a selective/limited waiver in this case.[5]

As to the burden of proving waiver, I believe the Majority correctly imposed the burden on Requester. This Court has previously addressed the shifting burdens of proof in an attorney-client privilege inquiry. In *Joyner v. Southeastern Pennsylvania Transportation Authority*, 736 A.2d 35, 38 n. 3 (Pa.Cmwlth.1999), we concluded that our Supreme Court's holding in *Commonwealth v. Maguigan*, 511 Pa. 112, 511 A.2d 1327, 1334 (1986), establishes that "the party asserting [attorney-client] privilege has the initial burden to prove that it is properly invoked" and only then does the burden shift to "the other party to prove why the applicable privilege would not be violated by the disclosure, e.g., the privilege was waived, an exception to the

---

4. The opinion in support of reversal concluded that the disclosed documents and the requested document do not contain the same subject matter and, hence, the attorney-client privilege was not waived with respect to the requested document.

5. As the Majority notes, our Superior Court recognized the concept of selective waiver in the context of attorney work product in *Commonwealth v. Sandusky*, 70 A.3d 886 (Pa.Super.2013), holding that the core purpose of the attorney work-product doctrine was not violated by a limited disclosure to the court and the supervising judge of a grand jury.

privilege exists and is applicable, etc." In *Joe v. Prison Health Services, Inc.*, 782 A.2d 24, 31 (Pa.Cmwlth.2001), we held that "[t]he party asserting [attorney-client] privilege has the initial burden to prove that it is properly invoked, and the party seeking to overcome the privilege has the burden to prove an applicable exception to the privilege."

For the reasons stated above, I concur in the result reached by the Majority.