Ryan **BAGWELL**, Petitioner

v.

**PENNSYLVANIA OFFICE OF ATTORNEY GENERAL,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted March 13, 2015.
Decided May 27, 2015.

Ryan Bagwell, pro se.

Howard G. Hopkirk, Senior Deputy Attorney General, Harrisburg, for respondent.

BEFORE: DAN PELLEGRINI, President Judge, ROBERT SIMPSON, Judge, ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Senior Judge ROCHELLE S. FRIEDMAN.

Ryan Bagwell petitions for review, *pro se*, of the September 30, 2014, final determination of the Pennsylvania Office of Attorney General (OAG) denying Bagwell's request for records under the Right–to–Know Law (RTKL).[1] We affirm.

On August 11, 2014, the OAG received from Bagwell a request for records seeking:

1. all emails, letters, memoranda, reports, faxes, transcripts and subpoenas that were reviewed by H. Geoffrey Moulton[2] and David Peifer during the course of Mr. Moulton's internal review of the [Gerald] Sandusky scandal between February 4, 2013 and June 23, 2014.

2. all transcripts, reports, memorandums and notes of interviews conducted by Mr. Moulton and Mr. Peifer during the OAG's internal review noted in Item 1. If a transcript of an interview does not exist, please provide a copy of an audio recording if one exists.

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. The Attorney General appointed Moulton to internally review the OAG's investigation of

Gerald Sandusky. *Bagwell v. Office of Attorney General*, (Pa.Cmwlth., No. 1651 C.D.2014, filed January 12, 2015), slip op. at 1.

(Bagwell Request, 8/10/14, at 1.) The OAG's Open Records Officer (Records Officer) informed Bagwell that it required an additional 30 days to respond to the request pursuant to section 902(a)(4) and (7) of the RTKL, 65 P.S. § 67.902(a)(4) and (7).

On September 17, 2014, the Records Officer responded to Bagwell's request and determined that Bagwell's request[3] was disruptive under section 506(a) of the RTKL, 65 P.S. § 67.506(a);[4] insufficiently specific and overbroad under section 703 of the RTKL, 65 P.S. § 67.703; and exempt from disclosure pursuant to the Investigating Grand Jury Act (Act),[5] the RTKL, and the Criminal History Record Information Act (CHRIA).[6]

Bagwell appealed the decision to the OAG's Right–to–Know Appeals Officer (Appeals Officer). The Appeals Officer issued a final determination affirming the Records Officer's decision. The Appeals Officer concluded that the request was overly broad and lacked specificity; the requested documents were exempt under the Act and CHRIA; the requested documents were exempt under section 708 of the RTKL because they were related to a criminal investigation; and the requested records were protected by the attorney-client privilege and/or the attorney work-product doctrine. This appeal followed.[7]

■ Initially, we observe that under section 305(a) of the RTKL, 65 P.S. § 67.305(a), records[8] in the possession of a Commonwealth agency are considered public unless the records are: (1) exempt under section 708 of the RTKL, 65 P.S. § 67.708; (2) protected by a privilege; or (3) exempt under federal or state law, regulation, judicial order, or decree. The burden of proving that records are protected by a privilege rests with the party asserting it. *Department of Labor and Industry v. Heltzel,* 90 A.3d 823, 834 (Pa. Cmwlth.2014) (*en banc*).

■ We conclude that the requested documents are privileged under section 102 of the RTKL, 65 P.S. § 67.102, pursu-

3. The Records Officer also stated:

 > To the extent that your use of the term "reports" can be interpreted to mean the official Report to the Attorney General on the Investigation of Gerald A. Sandusky, referenced in an agency press release dated June 23, 2014, your request is granted. You can access this press release and report at: http://www.attorneygeneral.gov/press. aspx?id=7885.

 (Records Officer Response, 9/17/14, at 1.)

4. The Records Officer noted that Bagwell had made numerous prior requests for records relating to Sandusky. (Records Officer Response, 9/17/14, at 1–2.) Most recently, Bagwell sought *inter alia* " 'other records obtained by Mr. Moulton during the course of his noncriminal review of the Sandusky investigation.' " *Bagwell,* slip op. at 2 n. 2 (citation omitted). The Records Officer denied the request. Bagwell appealed to the OAG's Right–to–Know Appeals Officer but later withdrew that portion of his appeal. *Id.*

5. 42 Pa.C.S. §§ 4541–4553.

6. 18 Pa.C.S. §§ 9101–9183.

7. Our standard of review is *de novo* and our scope of review is plenary. *Bowling v. Office of Open Records,* 621 Pa. 133, 75 A.3d 453, 477 (2013).

8. Section 102 of the RTKL defines "record" as:

 > [i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

 65 P.S. § 67.102.

ant to the attorney-work-product doctrine and the attorney-client privilege.[9]

To assert the attorney-client privilege, an agency must demonstrate that:

" '(1) The asserted holder of the privilege is or sought to become a client.

(2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

(3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal manner, and not·for the purpose of committing a crime or tort.

(4) The privilege· has been claimed and is not waived by the client.' "

*Bagwell v. Pennsylvania Department of Education*, 103 A.3d 409, 420 n. 12 (Pa. Cmwlth.2014) (*Department of Education* ) (*en banc*) (citation omitted).

▇▇▇ In *Department of Education*, this court discussed the attorney-client privilege and the attorney-work-product doctrine. The attorney-client privilege protects information exchanged between the client and the attorney. *Id.* at 415. The attorney-work-product doctrine applies to records that are products of the attorney and may extend to products of an attorney's representative. *Id.* The attorney-work-product doctrine protects " 'mental impressions, theories, notes, strategies, research and the like created by an attorney in the course of his or her professional duties ... from disclosure.' " *Id.* at 416 (citation omitted).

In *Department of Education*, Bagwell sought " 'all letters, memos, reports, contracts and emails sent to former Secretary

Ron Tomalis and/or his assistant Jane Shoop between November 5, 2011 and July 31, 2013 from' " certain named individuals, including counsel from the law firm of Freeh Sporkin & Sullivan LLP (Freeh). *Id.* at 412 (citation omitted). Freeh was hired as counsel to the Pennsylvania State University Board of Trustees to conduct an investigation into the Sandusky scandal. *Id.* at 411. In *Department of Education*, this court determined that the attorney-work-product doctrine "applies when the work product at issue was created by a law firm engaged to investigate allegations that subsequently became the subject of lawsuits." *Id.* at 416.

▇▇▇ Here, Bagwell again seeks all records that were reviewed and all documents that were created by counsel during an investigation of Sandusky. Although Freeh conducted a criminal investigation and Moulton conducted a noncriminal investigation, the attorney-work-product doctrine similarly applies. Moreover, contrary to Bagwell's assertion, materials do not need to be prepared in anticipation of litigation for the privilege to attach. *Id.* at 417. Protection of an attorney's mental impression is unqualified. *Id.* at 416–17 (citation omitted).

Further, we agree with the OAG that Moulton's report, which was released to the public, did not destroy the protection afforded by the attorney-client privilege or the attorney-work-product doctrine. Selective waiver is recognized by our courts. *Id.* at 419. Similar to the Freeh report, the Moulton report and "[t]he circumstances here weigh in favor of selective or limited waiver, retaining the privileged nature of the records where they contain mental impressions." *Id.* at 420.

Accordingly, we affirm.[10]

---

9. Section 102 of the RTKL, defines "privilege" as "[t]he attorney-work product doctrine, the attorney-client privilege, the doctor-

patient privilege, the speech and debate privilege or other privilege recognized by a court interpreting the laws of this Commonwealth."

Judge RENÉE COHN JUBELIRER did not participate in the decision in this case.

*ORDER*

AND NOW, this 27th day of May, 2015, we hereby affirm the September 30, 2014, final determination of the Pennsylvania Office of Attorney General.

10. Because of our disposition of this matter, Bagwell is not entitled to costs or sanctions under section 1304 of the RTKL, 65 P.S. § 67.1304.