J-A19031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ALOIS AARON KUDLACH | : | |
| Appellant | : | No. 340 MDA 2021 |

Appeal from the Judgment of Sentence Entered August 20, 2016
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0001396-2015

BEFORE: BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: NOVEMBER 15, 2022**

Alois Aaron Kudlach appeals from the August 20, 2016 aggregate judgment of sentence of life imprisonment imposed after a jury found him guilty of first-degree murder, third-degree murder, aggravated assault, interception, disclosure or use of wire, electronic or oral communications ("IDUC"), and possessing instruments of crime ("PIC").[1] After careful review, we affirm the judgment of sentence.

The relevant facts and procedural history of this case, as gleaned from the certified record, are as follows: On the morning of August 30, 2015,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 2502(c), 2702(a)(1), 5703(1), and 907(B), respectively.

Appellant fatally shot his wife, Nuria Kudlach ("Decedent"), three times in the kitchen of their residence, following a lengthy argument. The parties had an extensive history of marital discord and were both considering a divorce. The parties' then-minor son was in an adjacent room of the residence at the time of the shooting.

Appellant was subsequently arrested in connection with this incident and proceeded to a jury trial on August 15, 2016. At trial, Commonwealth presented testimony from 30 witnesses, and Appellant presented testimony from four witnesses. Testimony from several expert witnesses, including forensic pathologists for both parties, was presented to the jury, and over 250 exhibits were admitted into evidence. Appellant asserted during his testimony that Decedent had a history of violent tendencies and that on the morning in question, he acted in self-defense after Decedent attempted to stab him with a butcher knife.

Following a six-day jury trial, Appellant was found guilty of first-degree murder, third-degree murder, aggravated assault, IDUC, and PIC. On August 20, 2016, the trial court sentenced Appellant to an aggregate term of life imprisonment.

On September 19, 2016, Appellant filed a timely notice of appeal. Following an extension, Appellant filed a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b), on December

14, 2016. On January 3, 2017, the trial court filed a Rule 1925(a) opinion, addressing all 11 issues raised by Appellant therein.

Thereafter, on May 24, 2017, a panel of this Court dismissed Appellant's appeal for failure to file an appellate brief. Appellant subsequently filed a PCRA[2] petition, requesting the reinstatement of his direct appeal rights. On February 24, 2021, Appellant's direct appeal rights were reinstated ***nunc pro tunc***.

On March 16, 2021, Appellant filed a timely notice of appeal. On March 24, 2021, the trial court ordered Appellant to file a concise statement in accordance with Rule 1925(b). Following an extension, Appellant filed a timely concise statement on May 4, 2021. On June 16, 2021, the trial court filed a comprehensive Rule 1925(a) opinion.

Appellant raises the following issues for our review:

> I.   WAS THE EVIDENCE INSUFFICIENT TO SUSTAIN THE VERDICT?
>
> II.  DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DENYING THE DEFENSE MOTION FOR A CONTINUANCE?
>
> III. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY PRECLUDING THE DEFENSE FROM INTRODUCING RELEVANT MENTAL HEALTH ISSUES OF THE DECEDENT?
>
> IV.  DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY PRECLUDING [] APPELLANT FROM TESTIFYING TO INCIDENTS OR STATEMENTS

---

[2] Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

MADE BY THE DECEDENT THAT FURTHER CORROBORATES HIS KNOWLEDGE OF THE DECEDENT'S ESCALATING VIOLENT TENDANCIES REGARDING APPELLANT AND ESTABLISHING THE DECEDENT AS THE AGGRESSOR?

V. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY PERMITTING THE COMMONWEALTH TO ADMIT EVIDENCE OF COMPUTER-GENERATED ANIMATION?

VI. WHETHER [] APPELLANT WAS DEPRIVED OF A FAIR TRIAL BASED UPON THE PROSECUTOR'S REPEATED ACTS OF PROSECUTORIAL MISCONDUCT?

VII. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY INSTRUCTING THE JURY WITH THE "CONSCIOUSNESS OF GUILT" CHARGE?

VIII. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY ALLOWING HEARSAY FROM THE DECEDENT TO BE INTRODUCED IN THE COMMONWEALTH'S CASE-IN-CHIEF?

IX. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY PERMITTING DETECTIVE ALSTON TO TESTIFY AS AN EXPERT WITHOUT HE BEING QUALIFIED AS AN EXPERT?

X. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY PRECLUDING THE DEFENSE'S FORENSIC PATHOLOGY EXPERT TO TESTIFY TO THE SEQUENCE OF THE DISCHARGE OF THE FIREARM IN FAIR RESPONSE TO THE COMMONWEALTH'S EXPERT TESTIMONY?

Appellant's brief at 9-11.

## I. Sufficiency of the Evidence

Appellant first argues that there was insufficient evidence to sustain his conviction for first-degree murder. *Id.* at 20-21. In support of this contention, Appellant contends that the Commonwealth failed "to prove that he was not acting out of self-defense when he shot the [D]ecedent[;]" and that he "possessed the requisite specific intent to kill." *Id.* at 23, 28.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), *appeal denied*, 4 A.3d 1054 (Pa. 2010).

## II. Motion for Continuance

Appellant next argues that the trial court abused its discretion in denying his August 8, 2016 motion for continuance, seven days before the commencement of trial. Appellant's brief at 30.

> The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality,

prejudice, bias, or ill-will, as shown by the evidence or
the record[.]

***Commonwealth v. Norton***, 144 A.3d 139, 143 (Pa.Super. 2016) (citation

omitted).

## III-IV.  Admissibility of Evidence

Appellant next argues that the trial court abused its discretion "by

precluding [him] from introducing relevant mental health issues of Decedent"

into evidence.  Appellant's brief at 34.  Appellant also contends that the trial

court erred by precluding him from testifying to incidents or statements which

would have "corroborat[ed] his knowledge of Decedent's escalating violent

tendencies…."  ***Id.*** at 39.

"[T]he admission of evidence is within the sound discretion of the trial

court and will be reversed only upon a showing that the trial court clearly

abused its discretion."  ***Commonwealth v. Fransen***, 42 A.3d 1100, 1106

(Pa.Super. 2012) (citation omitted), ***appeal denied***, 76 A.3d 538 (Pa. 2013).

> The threshold inquiry with admission of evidence is
> whether the evidence is relevant.  Evidence is relevant
> if it logically tends to establish a material fact in the
> case, tends to make a fact at issue more or less
> probable, or supports a reasonable inference or
> presumption regarding the existence of a material
> fact.  In addition, evidence is only admissible where
> the probative value of the evidence outweighs its
> prejudicial impact.

***Commonwealth v. Antidormi***, 84 A.3d 736, 750 (Pa.Super. 2014) (citations

and internal quotation marks omitted), ***appeal denied***, 95 A.3d 275 (Pa.

2014); ***see also*** Pa.R.E. 401(a), (b).

## V. Demonstrative Evidence

Appellant next argues that the trial court abused its discretion in permitting the Commonwealth to introduce a Computer-Generated-Animation ("CGA") as demonstrative evidence. Appellant's brief at 42.

Our Supreme Court has long recognized that,

> a CGA should be deemed admissible as demonstrative evidence if it: (1) is properly authenticated pursuant to Pa.R.E. 901 as a fair and accurate representation of the evidence it purports to portray; (2) is relevant pursuant to Pa.R.E. 401 and 402; and (3) has a probative value that is not outweighed by the danger of unfair prejudice pursuant to Pa.R.E. 403. However, new factors must be considered when evaluating a CGA. In particular, in determining the admissibility of a CGA the courts must address the additional dangers and benefits this particular type of demonstrative evidence presents as compared with more traditional demonstrative evidence. As a result, the court must, as discussed *infra*, issue limiting instructions to the jury explaining the nature of the specific CGA.

*Commonwealth v. Serge*, 896 A.2d 1170, 1178–1179 (Pa. 2006) (footnote omitted), *cert. denied*, 549 U.S. 920 (2006).

## VI. Prosecutorial Misconduct

Appellant next argues that "the Prosecutor committed repeated acts of prosecutorial misconduct during cross-examination of [Appellant] which deprived [him] of a fair trial[.]" Appellant's brief at 48.

"Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion." *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa.Super. 2005) (citations omitted), *appeal denied*, 928

- 7 -

A.2d 1289 (Pa. 2007). Not every unwise remark on a prosecutor's part, however, constitutes reversible error. *Id.* "Prosecutorial misconduct occurs when the effect of the prosecutor's comments would be to prejudice the trier of fact, forming in its mind fixed bias and hostility toward the defendant so that it could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Duffy*, 832 A.2d 1132, 1137 (Pa.Super. 2003), *appeal denied*, 845 A.2d 816 (Pa. 2004).

> Counsel['s] remarks to the jury may contain fair deductions and legitimate inferences from the evidence presented during the testimony. The prosecutor may always argue to the jury that the evidence establishes the defendant's guilt, although a prosecutor may not offer his personal opinion as to the guilt of the accused either in argument or in testimony from the witness stand. Nor may he or she express a personal belief and opinion as to the truth or falsity of evidence of defendant's guilt, including the credibility of a witness.

*Commonwealth v. Chmiel*, 777 A.2d 459, 466 (Pa.Super. 2001), *appeal denied*, 788 A.2d 372 (Pa. 2001), *cert. denied*, 535 U.S. 1059 (2002).

## VII. Jury Instructions

Appellant next argues that "the trial court erred in instructing the jury with the 'consciousness of guilt' instruction over [his] objection as the proffered evidence does not rise to the level of evidence contemplated by the standard jury instruction because … it is not evidence reflective of consciousness of guilt." Appellant's brief at 52.

"[A] trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." ***Commonwealth v. Charleston***, 94 A.3d 1012, 1021 (Pa.Super. 2014), ***appeal denied***, 104 A.3d 523 (Pa. 2014) (citation omitted). "A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue." ***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa.Super. 2013).

## VIII.  Hearsay Testimony

Appellant next argues that the trial court abused its discretion in allowing the Commonwealth to introduce hearsay testimony from Decedent based upon the theory that they were admitted to demonstrate her state of mind during the marriage.  Appellant's brief at 55.

Hearsay is defined as "a statement that the declarant does not make while testifying at the current trial or hearing[, offered] in evidence to prove the truth of the matter asserted in the statement."  Pa.R.E. 801(c) (numeration omitted).  Hearsay is generally inadmissible at trial unless it falls into an exception to the hearsay rule.  ***See*** Pa.R.E. 802.  Rule 803 contains several recognized exceptions to the hearsay rule, including the state of mind exception:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

. . . .

> **(3) Then-Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's **then-existing state of mind (such as motive,** intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Pa.R.E. 803(3) (emphasis added).

"Where the declarant's out-of-court statements demonstrate h[er] state of mind, are made in a natural manner, and are material and relevant, they are admissible pursuant to the exception." ***Commonwealth v. Johnson***, 107 A.3d 52, 84 (Pa. 2014) (citations and emphasis omitted), ***cert. denied***, ___ U.S. ___, 136 S.Ct. 43 (2015).

**IX-X.  Expert Testimony and Opinion Testimony by Lay Witnesses**

Appellant next argues that the trial court abused its discretion in allowing Detective John Aston to testify as an expert "without qualifying [him] as an expert in the field of ballistics[.]"  Appellant's brief at 60.  Appellant further argues that "the trial court erred in precluding [Appellant's] forensic pathology expert[, Dr. Cyril Wecht,] to testify to the sequence of the discharge of the firearm in fair response to the Commonwealth's expert testimony[.]" ***Id.*** at 63.

Expert testimony is admissible if it concerns a subject beyond the knowledge, information, or skill possessed by the average layperson, as

phenomena and situations that are matters of common knowledge may not be the subject of expert testimony. Pa.R.E. 702.

> [I]n cases involving the admission of expert testimony . . . the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion. An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice.

*Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa.Super. 2013) (citation omitted), *appeal denied*, 80 A.3d 775 (2013).

Rule 701, on the contrary, provides as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness, helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. Thus, "Rule 701 permits a layperson to testify in the form of an opinion, however, such testimony must be rationally based on that witness' perceptions." *Huggins*, 68 A.3d at 967.

Following a thorough review of the record, including the briefs of the parties, the applicable law, and the well-reasoned opinions of the trial court, it is our determination that Appellant's claims warrant no relief. In two separate opinions spanning a total of 26 pages in length, the trial court comprehensively discussed each of Appellant's ten allegations of error and concluded that they are without merit. We find that the trial court's

- 11 -

conclusions are supported by competent evidence and are clearly free of legal error.

Specifically, we agree with the trial court that the Commonwealth met its burden to disprove Appellant's assertion that he acted in justifiable self-defense, as his claim that Decedent was armed with a butcher knife immediately before the killing lacked merit. On the contrary, the Commonwealth's evidence demonstrated that the third, fatal shot to Decedent struck her in the face as she cowered near the floor. The trial court also properly noted that Appellant's use of a deadly weapon on a vital part of Decedent's body was sufficient to establish a specific intent to kill and malice. Trial Court Rule 1925(a) Opinion, 6/16/21 ("2021 Opinion") at 2-4.

We also agree that the trial court's denial of Appellant's motion for continuance, for additional time to review the Commonwealth's blood stain pattern analysis, was not improper. The trial court properly notes that Appellant failed to provide a justifiable request for the delay, as he was in possession of the evidence underlying the Commonwealth's blood stain analysis for 10 months preceding trial. Trial Court Rule 1925(a) Opinion, 1/3/17 ("2017 Opinion") at 2-4.

We further agree that Appellant's claim that the trial court erred in precluding references to Decedent's mental health at trial is baseless. The record reflects that Appellant did, in fact, testify with regard to Decedent's suicide attempt and hospitalization, and thus, the Commonwealth withdrew

its objection to the introduction of references to Decedent's mental health. **See id.** at 11-14; 2021 Opinion at 10.

We also agree with the trial court that there is no merit to Appellant's claim that it erred in precluding him from testifying as to incidents which would have corroborated his knowledge of Decedent's escalating violent tendencies. On the contrary, the record establishes that this testimony was largely permitted at trial. 2021 Opinion at 7.

We further agree with the trial court that the admission of a CGA as demonstrative evidence was proper, as Appellant was not unduly hampered in his ability to challenge the authenticity of the CGA evidence at the **in limine** hearing; and the probative value of this evidence outweighed its prejudicial impact. **Id.** at 4-6.

We next agree with the trial court that the prosecutor's argumentative statements and behavior during her cross-examination of Appellant, when taken as a whole, did not have the effect of prejudicing the jury. **Id.** at 7-8.

We also agree with the trial court that, contrary to Appellant's objection, its "consciousness of guilt" instruction to the jury was properly supported by the evidence presented at trial. **Id.** at 9-10.

We further agree with the trial court that Appellant's hearsay challenge to Decedent's statements that she felt "ganged up on" by Appellant and their son, and that she "had the divorce talk again with [her] husband," were

properly admitted to demonstrate her mental state during the marriage and her view of the relationship. 2017 Opinion at 10-11.

We next agree with the trial court that Appellant's objection to Detective Aston being offered as a "firearms or weapons expert" is meritless, as the record reflects that his testimony that "a shell casing ejected from a firearm will bounce when it hits a linoleum floor" constituted a mere lay opinion, and not expert testimony. *Id.* at 5, 7-9.

Lastly, we find that the trial court properly precluded Appellant's forensic pathology expert from testifying as to the sequence of the shooting, because it was beyond the scope of his expert report. *Id.* at 5, 9-10.

Accordingly, we adopt those relevant portions of the trial court's comprehensive January 3, 2017 and June 16, 2021 opinions as our own for purposes of this appellate review.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/15/2022

- 14 -

Parks Miller
Muir



**IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
CRIMINAL ACTION - LAW**

COMMONWEALTH OF PENNSYLVANIA )
                             )
                v.           )    No. CP-14-CR-1396-2015
                             )
ALOIS A. KUDLACH            )

*Attorney for Commonwealth:*          *Stacy Parks Miller, Esquire*
*Attorney for Defendant:*             *Karen G. Muir, Esquire*

## OPINION IN RESPONSE TO MATTERS COMPLAINED OF ON APPEAL

Presently before the Court is an appeal filed by Alois A. Kudlach ("Appellant").

Appellant filed a Statement of Matters Complained of on Appeal ("Statement") on December 14, 2016. Appellant's Statement contains the following eleven (11) issues:

1. Whether the lower court erred in denying the only continuance request by the Appellant after the Commonwealth continued the case for almost a year and continued to provide discovery days before the trial began in a First Degree Murder case.

2. Whether the lower court erred in granting the Commonwealth's Motion to Compel and Ordering Appellant to provide copies of Appellant's expert reports prior to the close of the Commonwealth's case-in-chief.

3. Whether the lower court properly permitted the Commonwealth's pathologist to testify as a forensic pathologist and offer opinions consistent with forensic pathology.

4. Whether the lower court erred in denying Appellant's expert to testify in response to the Commonwealth's expert on the basis that the proposed testimony was beyond the scope of the Appellant's expert report.

5. Whether the lower court erred in allowing hearsay from the victim to be introduced during the Commonwealth's case-in-chief.

6. Whether the lower erred in granting the Commonwealth's Motion in Limine to exclude references to incidents regarding the victim's mental health.

1

☒O ☐RD ☐S

7. Whether the lower court erred in ruling that the audio-taped interviews and conversations were not played in their entirety during the Commonwealth's case-in-chief, but rather directed the Appellant to play the rest of the audiotapes.

8. Whether the lower court erred in not allowing Appellant to testify as to exhibits that had been identified by Commonwealth witnesses during the Commonwealth's case-in-chief.

9. Whether the lower court erred in ruling that the Commonwealth did not have to introduce the entire Facebook conversations during the Commonwealth case-in-chief, but rather, directed that the Appellant could inquire as to the complete conversations.

10. Whether the lower court erred in allowing Appellant's civil attorney to testify regarding matters that the civil attorney would only have known through attorney-client privilege.

11. Whether the lower court erred in allowing a police officer to testify as an expert in ballistics without prior notice to Appellant and then denying Appellant's request for a continuance to obtain an expert to refute the Commonwealth's witness.

The Court disagrees with Appellant's Statement for the reasons set forth below.

## DISCUSSION

Due to the interrelated nature of several of the issues in Appellant's Statement, the Court has arranged said issues in a manner which will aid in its analysis.

I. **Issues Regarding Discovery**

a. **Appellant's Continuance Request**

Pennsylvania Rule of Criminal Procedure 573 provides, in pertinent part, as follows:

B) Disclosure by the Commonwealth.

1) *Mandatory*. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

...

e) any results or reports of scientific tests, expert opinions, and

2

☒O ☐RD ☐S

written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

...

(D) Continuing Duty to Disclose. If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

...

Pa.R.Crim.P. 573(B)(1)(e), (D). The Commonwealth does not violate Rule 573 when it fails to disclose to the defense evidence that it does not possess and of which it is unaware. Commonwealth v. Boczkowski, 846 A.2d 75, 97 (Pa. 2004) (citing Commonwealth v. Gribble, 703 A.2d 426 (Pa. 1997)). When the evidence is exclusively in the custody of police, possession is not attributed to the Commonwealth for purposes of Rule 573. Commonwealth v. Collins, 957 A.2d 237, 253-54 (Pa. 2008) (trial court did not abuse its discretion in failing to preclude inculpatory lab test results not disclosed until second day of trial, where Commonwealth disclosed evidence on day it obtained it and there was no evidence that it had results earlier); Commonwealth v. Burke, 781 A.2d 1136, 1142 (Pa. 2001).

The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. Commonwealth v. Antidormi, 84 A.3d 736, 745–46 (Pa. Super. 2014), appeal denied, 95 A.3d 275 (Pa. 2014); Commonwealth v. Boxley, 948 A.2d 742, 746 (Pa. 2008). An abuse of discretion is not merely an error of judgment; rather discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record. Id. Moreover, "[a] bald allegation of an insufficient

3

☒O ☐RD ☐S

amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion." Commonwealth v. Ross, 57 A.3d 85, 91 (Pa. Super. 2012). An appellant must be able to show specifically in what manner he was unable to prepare for his defense or how he would have prepared differently had he been given more time, because a denial of a motion for continuance will not be reversed in the absence of prejudice." Id.; see also Commonwealth v. Sandusky, 77 A.3d 663, 672 (Pa. Super. 2013) (court's denial of defense continuance requests was not an abuse of discretion where over twelve thousand (12,000) pages of supplemental discovery were received by defense counsel through the four (4) months preceding trial and continuing throughout trial).

In the case at bar, Appellant contends "the lower court erred in denying the only continuance request by the Appellant after the Commonwealth continued the case for almost a year and continued to provide discovery days before the trial began in a First Degree Murder case."

The Court denied Appellant's August 8, 2016 Motion to Continue Trial due to the grounds for the motion becoming moot by the Commonwealth providing Appellant's counsel with a copy of the blood stain pattern analysis. See 8/9/16 Trial Court Order. Appellant filed a subsequent Motion to Continue Trial on August 10, 2016. In said motion, Appellant contended a continuance was necessary because he needed additional time to review the blood stain pattern analysis, to have an expert review the blood stain pattern analysis, and to review the approximately one hundred (100) pages of discovery disclosed to him between August 4, 2016 and August 9, 2016. See 8/10/16 Motion to Continue Trial. The Court denied Appellant's August 10, 2016 Motion to Continue Trial due to Appellant having been in possession of the evidence underlying the Commonwealth's blood stain pattern analysis during the ten (10) months preceding trial and Appellant's choice not to pursue the avenue of having a blood stain pattern

4

☒O ☐RD ☐S

analysis done during that time. Further, the Court found the disclosure of one hundred (100) pages of supplemental discovery five (5) days before the start of trial is not a voluminous disclosure which would cause prejudice to Appellant. Therefore, the Court did not err in denying Appellant's continuance requests.

### b. Commonwealth's Motion to Compel Appellant's Expert Reports

Pennsylvania Rule of Criminal Procedure 573(C)(2) states the following in regards to pretrial disclosure of a defendant's expert report:

> If an expert whom the defendant intends to call in any proceeding has not prepared a report of examination or tests, *the court, upon motion, may order that the expert prepare and the defendant disclose a report* stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.

Pa.R.Crim.P. 573(C)(2) (emphasis added).

In the case at bar, Appellant contends "the lower court erred in granting the Commonwealth's Motion to Compel and Ordering Appellant to provide copies of Appellant's expert reports prior to the close of the Commonwealth's case-in-chief."

On its face, Rule 573(C)(2) is clear that if a motion to compel an expert report is filed by the Commonwealth, the court may order a defendant's expert to prepare and disclose an expert report to the Commonwealth. Therefore, the Court properly followed the procedure set forth in Rule 573(C)(2) when it granted the Commonwealth's Motion to Compel the expert report of Appellant's expert.

### II. Issues Regarding Expert Testimony

Pennsylvania Rule of Evidence 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a) the expert's scientific, technical, or other specialized knowledge is beyond

5

☒O ☐RD ☐S

that possessed by the average layperson;

b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

### a. Expert Testimony of Commonwealth's Pathologist

The admission of expert testimony is within the trial court's discretion and will not be remanded, overruled, or disturbed absent a clear abuse of discretion. A.J.B. v. M.P.B., 945 A.2d 744, 749 (Pa. Super. 2008). The standard for qualification of an expert witness is a liberal one. Rauch v. Mike–Mayer, 783 A.2d 815 (Pa. Super. 2001). When determining whether a witness is qualified as an expert, the court is to examine whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. Miller v. Brass Rail Tavern, 664 A.2d 525 (Pa. 1995). The court is to ascertain whether the proposed witness has sufficient skill, knowledge, or experience in the field at issue as to make it appear that the opinion or inference offered will probably aid the trier of fact in the search for truth. Bergman v. United Servs. Auto. Ass'n, 742 A.2d 1101 (Pa. Super. 1999).

In the field of medicine, specialties sometimes overlap and a practitioner may be knowledgeable in more than one field. Rettger v. UPMC Shadyside, 991 A.2d 915, 930 (Pa. Super. 2010) (citing Bindschusz v. Phillips, 771 A.2d 803 (Pa. Super. 2001)). Doctors will have different qualifications and some doctors will be more qualified than others to provide evidence about specific medical practices. Id. However, it is for the jury to determine the weight to be given to expert testimony in light of the qualifications presented by the witness. George v. Ellis, 820 A.2d 815, 817 (Pa. Super. 2003).

6

☒O ☐RD ☐S

In the case at bar, Appellant contends the lower court improperly permitted the Commonwealth's pathologist to testify as a forensic pathologist and offer opinions consistent with forensic pathology.

The Commonwealth's forensic pathologist testified, as to his qualifications, as follows: he has been a practicing pathologist for twenty-six (26) years (N.T. 8/16/16, p. 4); he practiced forensic pathology (Id. at p. 5); he performs forensic autopsies on homicide victims (Id. at 6); he performs approximately fifteen (15) forensic autopsies on homicide victims each year (Id. at 8); he has performed approximately fifteen hundred (1,500) to two thousand (2,000) autopsies throughout his career (Id. at p. 11); he is board certified in anatomic pathology, clinical pathology, and cytopathology (Id. at p. 10); he participates in continuing medical education programs for forensic pathology (Id. at p. 11); and he has been accepted and testified as an expert in forensic pathology in six (6) Pennsylvania counties (Id. at pp. 11-12). Additionally, his curriculum vitae delineates an appropriate educational background for his experience as a forensic pathologist. See Commonwealth Ex. 229. After reviewing the aforementioned testimony and curriculum vitae, the Court properly permitted the Commonwealth's forensic pathologist to testify and offer opinions consistent with forensic pathology.

### b. Police Officer Testimony Regarding the Operation of Firearms

Expert opinion testimony is proper only where formation of an opinion on a subject requires knowledge, information, or skill beyond what is possessed by the ordinary juror. Ovitsky v. Capital City Econ. Dev. Corp., 846 A.2d 124, 126 (Pa. Super.2004) (citing Commonwealth v. Carter, 589 A.2d 1133, 1134 (Pa. Super. 1991)). Testimony is not admissible as expert testimony where it is not something that is beyond the grasp of the average layperson. Commonwealth v. Williams, 141 A.3d 440, 462-63 (Pa. 2016) (testimony amounting to the conclusion that a person thrown onto the sidewalk from a fast moving van would likely sustain

7

☒O ☐RD ☐S

injuries and damage to their clothing is within the grasp of the average layperson); see also Commonwealth v. Kennedy, — A.3d —, 2016 WL 7103942, *7 (Pa. Super. Dec. 6, 2016) (court did not abuse discretion in admitting lay opinion testimony from crime scene investigator regarding bullet trajectory).

In the case at bar, Appellant contends "the lower court erred in allowing a police officer to testify as an expert in ballistics without prior notice to Appellant and then denying Appellant's request for a continuance to obtain an expert to refute the Commonwealth's witness."

At trial, the following exchange between the Commonwealth and a detective who was present at the crime scene:

> Q. Now, before I take you any further, as a detective, you told us that you have experience investigating homicides. But as a police officer as well as a detective, do you have training in firearms?
>
> A. Yes.
>
> Q. Are you able to use them safely and effectively?
>
> A. Yes.
>
> Q. Okay. And are you aware of how firearms generally work in the sense that they dislodge a casing?

N.T. 8/15/16, pp. 224-25. Appellant's counsel objected to the detective being offered as "a firearms instructor" or to the detective "giving any expert opinion with respect to weapons." Id. at p. 225. The Commonwealth stated the detective would only testify as to "the fact that shell casings can bounce when they hit a linoleum floor." Id. at p. 226. Appellant's counsel then moved for a continuance to retain an expert to "talk about how they [shell casings] bounce, the direction they bounce and so forth." Id. Said continuance was denied by the Court. Id.

The fact that a shell casing ejected from a firearm will bounce when it falls upon a linoleum floor is not something that is beyond the grasp of the average layperson, and thus does

8

☒O ☐RD ☐S

not constitute expert testimony. See Williams, supra; Kennedy, supra. Therefore, the Court properly admitted said testimony as lay testimony and did not err by denying Appellant's counsel's continuance request.

### c. Appellant's Expert's Testimony

Trial courts may preclude experts from testifying beyond the fair scope of their pre-trial reports. Whitaker v. Frankford Hosp. of City of Philadelphia, 984 A.2d 512, 523 (Pa. Super. 2009); Brodowski v. Ryave, 885 A.2d 1045 (Pa. Super. 2005) (trial court properly precludes expert testimony on an issue where opinions would be beyond the fair scope of the expert report); Blicha v. Jacks, 864 A.2d 1214 (Pa. Super. 2004).

In the case at bar, Appellant contends the lower court erred in not allowing Appellant's expert to testify in response to the Commonwealth's expert on the basis that the proposed testimony was beyond the scope of the Appellant's expert's report.

At trial, the following exchange between Appellant's counsel and Appellant's expert took place:

> Q: You are aware also then of Dr. Kamerow's opinion with respect to the sequence of the shooting, when things happened, left arm, right arm, breast, and so forth?
>
> A. Yes.
>
> Q. Do you have an opinion with respect to his opinion on the sequence of that discharge of the firearm?

N.T. August 19, 2016 at p.56-57. The Commonwealth objected to Appellant's expert providing an opinion on the Commonwealth's expert's opinion as to the sequence of the shooting because Appellant's expert did not opine in his expert report on said issue. Id. The Commonwealth's expert did not testify outside of the conclusions drawn in his expert report. Id. at p. 58. Appellant's counsel admitted to the Court that Appellant's expert did not provide information on

9

☒O ☐RD ☐S

the sequence of the shooting in his expert report. Id. Therefore, the Court properly precluded Appellant's expert from testifying as to information which was absent from his expert report.

## III.   Introduction of Victim's Hearsay

Pennsylvania Courts have consistently held that the out-court-statements of a homicide victim, where probative of the victim's view of his or her relationship with the defendant, are relevant and admissible to show the presence of ill will, malice, or motive for the killing. See Commonwealth v. Fletcher, 750 A.2d 261, 276 (Pa. 2000), cert. denied, 531 U.S. 1035 (2000) (victim's statement was relevant to his state of mind regarding relationship with defendant and, therefore, admissible to prove presence of ill will, malice, or motive for killing); Commonwealth v. Puksar, 740 A.2d 219, 225 n. 6 (Pa. 1999), cert. denied, 531 U.S. 829 (2000) (victim's statement that he did not trust defendant and that victim and defendant were involved in dispute admissible under state of mind exception to prove presence of ill will, malice, or motive for killing); Commonwealth v. Chandler, 721 A.2d 1040, 1045 (Pa. 1998) (victim's statements "concerning her negative feelings about Appellant and her relationship with him" admissible under state of mind exception because victim's "opinion of Appellant and her marriage to him went to the presence of ill will, malice, or motive for the killing"); Commonwealth v. Collins, 703 A.2d 418, 424–25 (Pa. 1997), cert. denied, 525 U.S. 1015 (1998) (statements relevant under state of mind exception to prove, *inter alia*, motive).

In the case at bar, Appellant contends "the lower court erred in allowing hearsay from the victim to be introduced during the Commonwealth's case-in-chief."

At trial, the Commonwealth elicited from the victim's son statements which had been made by the victim regarding how she felt she was consistently ostracized and disrespected by Appellant and her son. N.T. 8/16/16, p. 78. Said statements are admissible under the state of mind exception to hearsay because they are probative of the victim's view of her relationship

10

☒O  ☐RD  ☐S

with Appellant and thus are relevant and admissible to show the presence of ill will, malice, or motive for the killing. See Fletcher, supra. Therefore, the Court properly permitted said statements to be introduced.

## IV.     Exclusion of References to Victim's Mental Health

Appellant contends the lower court erred in granting the Commonwealth's Motion in Limine to exclude references to incidents regarding the victim's mental health.

The Court's Motion in Limine Order states, in pertinent part, as follows:

> 2) The Commonwealth's Motion in Limine to Preclude Reference to Incidents Regarding Victim's Mental Health is **GRANTED** in regards to the September 28, 2014 and June 20, 2015 incidents, and any records thereof.

8/4/16 Trial Court Order. When Appellant took the stand at trial, he testified in violation of said Order by referencing the victim's September 28, 2014 suicide attempt and hospitalization and his attempt to obtain guardianship of the victim as a result thereof. N.T. 8/19/16, pp. 130-31. After Appellant's violation of said Order, the Commonwealth withdrew its objection to the introduction of references to the victim's mental health due to the Commonwealth's intent to cross-examine Appellant on the subjects. Id. at p. 132. After the Commonwealth's withdrawal of its objection, Appellant testified as to the June 20, 2015 incident regarding the victim's mental health. Id. at pp. 145-54.

Appellant's argument on this issue has been mooted by Appellant's violation of said Order while testifying at trial, the Commonwealth's withdrawal of its objection to the introduction of references to the victim's mental health after said violation, and Appellant's testimony referencing the victim's mental health after the Commonwealth's withdrawal of its objection.

11

☒O  ☐RD  ☐S

## V.  Issues Regarding Pa.R.E. 106

Pennsylvania Rule of Evidence 106 (Remainder of or Related Writings or Recorded

Statements) provides as follows:

> If a party introduces all or part of a writing or recorded statement, an adverse
> party may require the introduction, at that time, of any other part—or any other
> writing or recorded statement—that in fairness ought to be considered at the same
> time.

Pa.R.E. 106. The comment to the rule states:

> The purpose of Pa.R.E. 106 is to give the adverse party an opportunity to correct a
> misleading impression that may be created by the use of a part of a writing or
> recorded statement that may be taken out of context. This rule gives the adverse
> party the opportunity to correct the misleading impression at the time that the
> evidence is introduced. The trial court has discretion to decide whether other
> parts, or other writings or recorded statements, ought in fairness to be considered
> contemporaneously with the proffered part.

Id. (Comment). See Commonwealth v. McClure, 144 A.3d 970, 978 (Pa. Super. 2016). The rule

does not mandate a blanket admission of all related writings or recorded statements; rather, its

purpose is only to correct misleading or impartial evidence. Commonwealth v. Passmore, 857

A.2d 697 (Pa. Super. 2004), appeal denied, 868 A.2d 1199 (Pa. 2005); see also Commonwealth

v. Bryant, 57 A.3d 191 (Pa. Super. 2012) (following introduction of single page of diary

describing sexual assault, the defendant's vague assertion that victim's diary contained "fantasy"

was insufficient to establish relevancy of entirety of such diary as required to warrant admission

of entirety of diary, especially in absence of any specific reference to any fact or statement in

diary relevant to case or of assistance to jury, or which would contradict or otherwise

contextualize single entry describing sexual assault).

The admissibility of evidence "depends on relevance and probative value."

Commonwealth v. Stallworth, 781 A.2d 110, 117 (Pa. 2001). Evidence is only considered

relevant if it "logically tends to establish a material fact in the case, tends to make a fact at issue

12

☒O  ☐RD  ☐S

more or less probable or supports a reasonable inference or presumption regarding a material fact." Id. at 117–18 (citing Commonwealth v. Crews, 640 A.2d 395 (Pa. 1994)).

### a. Audio-Taped Interviews and Conversations

Appellant contends the lower court erred in ruling that the audio-taped interviews and conversations would not be played in their entirety during the Commonwealth's case-in-chief, but rather directed the Appellant to play the rest of the audiotapes.

At trial, the Commonwealth sought to introduce audio-taped interviews and conversations involving Appellant. N.T. 8/16/16, p. 194. The Court performed an in camera review of the transcripts of said interviews and permitted the Commonwealth to introduce the audio recording of pages thirty-eight (38) through sixty-five (65) of the 4:25 p.m. interview of Appellant on August 30, 2015. N.T. 8/17/16, p. 3. The Court permitted introduction of said portion because it included Appellant's account of the shooting of the victim, and was thus admissible as relevant and probative. See Stallworth, supra. The remainder of the audio-taped interviews of Appellant were either cumulative evidence, irrelevant, or included material which was barred from admission by the Court's August 4, 2016 Motion in Limine Order. The portion which the Court permitted the Commonwealth to introduce did not create a misleading impression of Appellant's account of the shooting and did not turn Appellant's statement into an admission of guilt. See Commonwealth's Ex. 227.

Therefore, the Court did not err by permitting the Commonwealth to play relevant portions of audio-taped recordings of Appellant at trial.

### b. Facebook Conversations

Appellant contends the lower court erred in ruling that the Commonwealth did not have to introduce entire Facebook conversations during the Commonwealth case-in-chief, but rather, directed that the Appellant could inquire as to the complete conversations.

13

☒O ☐RD ☐S

At trial, the Commonwealth introduced a post from the victim's Facebook page, which included a conversation through comments on said post. N.T. 8/17/16, pp. 17, 36; Commonwealth's Ex. 136. Appellant's counsel argued the Commonwealth did not introduce the entire conversation, and in response the Commonwealth stated it introduced the complete conversation of the relevant post. Id. at p. 18. The Court ruled that Appellant's counsel could inquire as to the completeness of the conversation on cross-examination. Id.

A review of the Facebook post and comments which were published to the jury shows that the complete conversation was introduced at trial. See Commonwealth's Ex. 136. Therefore, the Court did not err because the entirety of the relevant Facebook conversation was introduced.

## VI.   Appellant's Testimony Regarding Commonwealth's Exhibits

Appellant contends the lower court erred in not allowing Appellant to testify as to exhibits that had been identified by Commonwealth witnesses during the Commonwealth's case-in-chief.

At trial, Appellant began to testify as to the victim's pain medication use. N.T. 8/19/16, p. 160. The Commonwealth objected to Appellant testifying about the victim's pain medication use, due to its irrelevance. Id. at pp. 160-61. Appellant's counsel argued that because evidence was entered during the Commonwealth's case-in-chief which included reference to pain medications taken by the victim, said testimony was permitted. Id. at p.161-62. The Court ruled that Appellant could testify as to how the victim's use of the pain medication caused her to become violent or placed him in fear of her. Id. at p.163.

The Court properly barred Appellant from testifying as to any irrelevant and inadmissible material included in the Commonwealth's evidence. The admission of the Commonwealth's evidence for the relevant portion of said evidence does not grant Appellant carte blanche to testify as to any and all irrelevant and inadmissible portions of said evidence. Therefore, the

14

☒O  ☐RD  ☐S

Court properly barred Appellant from testifying as to irrelevant and inadmissible portions of the Commonwealth's exhibits.

## VII.    Testimony of Appellant's Civil Attorney

The attorney-client privilege provides as follows:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon trial by the client.

42 Pa.C.S. § 5928. The attorney-client privilege is intended to foster candid communications between legal counsel and the client so that counsel can provide legal advice based upon the most complete information possible from the client. Commonwealth v. Chmiel, 738 A.2d 406 (Pa. 1999); Joe v. Prison Health Servs.. Inc., 782 A.2d 24, 31 (Pa. Cmwlth. 2001). Application of the privilege requires confidential communications made in connection with providing legal services. Commonwealth v. duPont, 730 A.2d 970 (Pa. Super. 1999), appeal denied, 749 A.2d 466 (Pa. 2000). Once the attorney-client communications have been disclosed to a third party, the privilege is deemed waived. Joe, supra. The party asserting the privilege has the initial burden to prove that it is properly invoked, and the party seeking to overcome the privilege has the burden to prove an applicable exception to the privilege. Joyner v. Southeastern Pennsylvania Transportation Authority. 736 A.2d 35 (Pa. Cmwlth. 1999).

In the case at bar, Appellant contends the lower court erred in allowing Appellant's civil attorney to testify regarding matters that the civil attorney would only have known through attorney-client privilege.

At trial, the Commonwealth called to the stand the estate planning attorney of Appellant and the victim. The Court ruled that the attorney could only testify as to documents which had been filed as a public record. N.T. 8/17/16, p. 179. Further, the Court instructed the attorney to

15

☒O  ☐RD  ☐S

raise the attorney-client privilege if he felt he had an ethical obligation to do so. Id. Appellant's counsel argued attorney-client privilege still attached to the publically filed documents because the information contained in said documents was garnered through the attorney's conversations with Appellant. Id. at p. 166-67.

Appellant failed to properly invoke the attorney-client privilege. Specifically, Appellant failed to establish how a waiver of attorney-client privilege would not occur in relation to documents which were filed as a public record. See Joe, supra (disclosure to third party waives privilege). Therefore, the Court properly permitted the estate planning attorney to testify in regards to documents which were filed as a public record.

For the foregoing reasons, the Court respectfully requests that its rulings remain undisturbed.

BY THE COURT:

Date:   January 3, 2017

Jonathan D. Grine, Judge

16

☒O ☐RD ☐S